1

**LTL ATTORNEYS LLP**
David W. Ammons (SBN 187168)
  david.ammons@ltlattorneys.com
Melissa A. Meister (SBN 296744)
  melissa.meister@ltlattorneys.com
300 South Grand Avenue, 14th Floor
Los Angeles, CA 90071
Tel: (213) 612-8900
Fax: (213) 612-3773

2

3

4

5

6

Attorneys for Defendants
UNIVERSAL CITY STUDIOS
PRODUCTIONS, LLLP and
NBCUNIVERSAL MEDIA, LLC

7

8

### UNITED STATES DISTRICT COURT

9

### CENTRAL DISTRICT OF CALIFORNIA

10

11 | LEMONT MACON,

CASE NO.: 18-CV-06491-SVW (AFM)

12 | Plaintiff,

**DEFENDANTS UNIVERSAL CITY STUDIOS PRODUCTIONS, LLLP'S AND NBCUNIVERSAL MEDIA, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S COMPLAINT AND DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

13 | v.

14 | UNIVERSAL CITY STUDIOS
PRODUCTIONS, LLLP;
NBCUNIVERSAL MEDIA, LLC; and
DOES 1 through 25, inclusive,

15

16

17 | Defendants.

18

***(Filed Concurrently with the Declarations of David W. Ammons and Diva Kaminsky; and Proposed Order)***

19

20

21 | Date:        October 1, 2018
Time:        1:30 p.m.
Judge:       Hon. Stephen V. Wilson
Courtroom: 10A
             350 W. 1st Street, 10th Floor
             Los Angeles, CA

22

23

24

25

26

27

28

MOTION TO COMPEL ARBITRATION

**TO THE COURT, PLAINTIFF, AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 1, 2018 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 10A of the above-entitled Court, located at 350 W. 1st Street, 10th Floor, Los Angeles, California 90012, Defendants Universal City Studios Productions LLLP ("UCSP") and NBCUniversal Media, LLC ("NBCU") (collectively, "Defendants") will and hereby do petition and move the Court for an order: (1) compelling arbitration of all claims alleged by Plaintiff Le'Mont Macon ("Macon" or "Plaintiff") in his Complaint; and (2) dismissing or, in the alternative, staying all proceedings in this action pending the completion of said arbitration.

This Motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. §§1-16, and California Code of Civil Procedure §§1280-1294.4 on the grounds that Plaintiff signed a binding, enforceable agreement to arbitrate any claims arising out of his employment with Defendants and is therefore contractually and legally bound to arbitrate all of the claims alleged in this action. Plaintiff improperly brought this lawsuit in court instead of the correct forum of arbitration and is refusing to submit his claims to arbitration. The Court should dismiss this action and order the case to arbitration. Alternatively, the Court should stay the instant action and order the case to arbitration. *See* 9 U.S.C. §3; Cal. Civ. Proc. Code §1281.4. The arbitration agreement is attached as Exhibit D to the Declaration of Diva Kaminsky, which is filed in support of this Notice and Motion and is hereby incorporated by reference.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place telephonically and by way of e-mail from July 11 through

//

//

//

July 20, 2018.  After the conference of counsel, Plaintiff's counsel refused to dismiss or stay the action pending arbitration, thus necessitating the filing of this Motion.

DATED: August 31, 2018                          **LTL ATTORNEYS LLP**

                                                 */s/ David W. Ammons*
                                                 David W Ammons
                                                 Melissa A. Meister

                                                 Attorneys for Defendants
                                                 Universal City Studios Productions
                                                 LLLP & NBCUniversal Media, LLC

# **TABLE OF CONTENTS**

I.      INTRODUCTION  ……………………………………………… 1

II.     STATEMENT OF RELEVANT FACTS  ……………………………… 2

        A.      Plaintiff's Employment History ..…………………………… 2

        B.      Plaintiff's Acceptance of the Arbitration Agreement ..…………….... 2

        C.      The Terms of Plaintiff's Arbitration Agreement ……………………4

        D.      Procedural History ……………………………………………… 6

        E.      Defendants' Meet and Confer Efforts ……………………………… 7

III.    ARGUMENT ……………………………………………………7

        A.      All of Plaintiff's Claims Are Subject to a Binding and Enforceable
                Arbitration Agreement ………………………………………………7

                1.      The Arbitration Agreement that Exists Between Plaintiff
                        and Defendants is Valid …………………………………………8

                2.      The Arbitration Agreement that Exists Between Plaintiff
                        and Defendants Encompasses the Dispute at Issue …………..10

        B.      The Court Should Dismiss the Action Because All of Plaintiff's
                Claims are Subject to Arbitration ……………………………..11

IV.     CONCLUSION ……………………………………………………12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Asher v. E! Entertainment Television, LLC*,
   No. CV 16-8919-RSWL-SSx, 2017 WL 3578699 (C.D. Cal. Aug. 16, 2017)........9

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ..........................................................................................7, 10

*Bischoff v. DirecTV, Inc.*,
   180 F. Supp. 2d 1097 (C.D. Cal. 2002)................................................................10

*Brookwood v. Bank of Am.*,
   53 Cal. Rptr. 2d 515 (Cal. Ct. App. 1996) .............................................................9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ................................................................................8

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) ................................................................................................7

*Cox v. Ocean View Hotel Corp.*,
   533 F. 3d 1114 (9th Cir. 2008) ...............................................................................8

*Curtis v. GE Capital Corp.*,
   No. 5:12CV133-RLV, 2013 WL 4212932 (W.D.N.C. Aug. 15, 2013)..................9

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ................................................................................................8

*Dixon v. NBCUniversal Media, LLC*,
   947 F. Supp. 2d 390 (S.D.N.Y. 2013) ....................................................................9

*EEOC v. Waffle House*,
   534 U.S. 279 (2002) ................................................................................................7

*Farrow v. Fujitsu Am., Inc.*,
   37 F. Supp. 3d 1115 (N.D. Cal. 2014)...................................................................11

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) .................................................................9

*Goff v. G2 Secure Staff LLC*,
   No. CV 12-10008-CAS (VBKx), 2013 WL 1773968, (C.D. Cal. Apr. 22, 2013) ..9

*Harris v. TAP Worldwide, LLC*,
   203 Cal. Rptr. 3d 522 (Cal. Ct. App. 2016) .............................10

*Kilgore v. KeyBank Nat'l Ass'n*,
   718 F.3d 1052 (9th Cir. 2013) ................................................8

*Luna v. Kemira Specialty, Inc.*,
   575 F. Supp. 2d 1166 (C.D. Cal. 2008).................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. at 24 (2008)........................................................7, 10

*NBCUniversal Media, LLC v. Pickett*,
   No. LA CV 17-01404 JAK (MRWx) ......................................9

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev.(US) LLC*,
   282 P. 3d 223 (Cal. 2012)....................................................10

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010) .................................................................7

*Sparling v. Hoffman Constr. Co.*,
   864 F.2d 635 (9th Cir. 1988) ..............................................11

*Steelworkers v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960) ............................................................11

*Tompkins v. 23andMe, Inc.*,
   840 F.3d 1016 (9th Cir. 2016) ..............................................8

1

## Statutes

9 U.S.C. § 2...................................................................................7

9 U.S.C. § 3...................................................................................12

9 U.S.C. §§1-16.............................................................................2

28 U.S.C. § 1332(a).......................................................................6

28 U.S.C. § 1441............................................................................6

## Other Authorities

Liana B. Baker, *GE to Sell Rest of NBC Stake to Comcast for $16.7 Billion*,
    Reuters (Feb. 12, 2013), https://www.reuters.com/article/us-ge-nbc-
    idUSBRE91B1IM20130212.......................................................9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Le'Mont Macon ("Macon or Plaintiff") entered into a binding arbitration agreement with Defendants Universal City Studios Productions LLLP and NBCUniversal Media, LLC ("Defendants") when he chose to accept Defendants' offer to become a Front Gate Supervisor at Universal Studios Hollywood on October 24, 2013.  Now, almost five years later, Plaintiff attempts to escape the bargain he struck with Defendants by filing an action in court seeking redress for claims he promised to bring in arbitration.  The Court should not allow Plaintiff to do so.

Defendants ask employees to opt-in to Defendants' alternative dispute resolution ("ADR") program, known as "Solutions," when they hire new employees or, as in Plaintiff's case, when they offer a union hourly employee a new non-union staff supervisory position.  Solutions is a structured dispute resolution procedure that provides a tiered system for employees to address any employment-related issues with Defendants.  The first two tiers of Solutions encourage informal resolution of complaints, and when that is not successful, provide for two tiers of ADR: first, mediation, and then arbitration.  In California, JAMS is the chosen arbitral forum for any disputes arising between Defendants and their employees.

Instead of working his way through Solutions' tiered dispute resolution process, Plaintiff improperly filed employment-related claims against Defendants in state court on June 26, 2018.  Defendants subsequently removed the action to this Court on July 27, 2018.  Defendants now bring a motion to compel Plaintiff to arbitrate his claims against Defendants as he agreed to do when he accepted the Front Gate Supervisor position in October 2013.

The Court should grant Defendants' motion to compel because Solutions is a valid arbitration agreement that is enforceable under the Federal Arbitration Act

("FAA"), 9 U.S.C. §§1-16. The employment-related claims that Plaintiff brought against Defendants fall wholly within the scope of Solutions. Plaintiff is thus bound under the FAA to arbitrate his claims before JAMS, and the Court should compel him to do so and dismiss this action while arbitration proceeds forward.

## II.     STATEMENT OF RELEVANT FACTS

### A. Plaintiff's Employment History

Plaintiff became employed with the Universal Studios Hollywood theme park ("Universal Studios") on or about March 23, 1990. (Declaration of Diva Kaminsky ["Kaminsky Decl."] at ¶ 3.) Plaintiff worked in various part-time and seasonal capacities at Universal Studios between 1990 and 2013, including crowd control and as a tram tour assistant and studio tour ambassador. (*Id.* at ¶ 3, Exh. A.) These positions were non-supervisory, union positions that were paid on an hourly basis. (*Id.*) In October 2013, Plaintiff applied to be a Front Gate Supervisor at Universal Studios, a salaried non-union position, by submitting his resume through Defendants' web-based Application Tracking System, "BrassRing." (*Id.* at ¶ 4.) To apply for a position with Defendants via BrassRing, Plaintiff had to create a unique applicant profile, tied to Plaintiff's unique user name and password. That profile would then be linked to every resume and application Plaintiff submitted and any candidate forms and/or offer letters that Plaintiff subsequently received. (*Id.*)

### B. Plaintiff's Acceptance of the Arbitration Agreement

Plaintiff's application for the position of Front Gate Supervisor was successful, and Defendants sent Plaintiff an email offer letter that attached a PDF letter offer of employment on October 23, 2013. (*Id.* at ¶ 5, Exhs. B; C.) The letter made clear that the offer of employment as a Front Gate Supervisor was expressly contingent on, among other things, Plaintiff's agreement "to be bound by Solutions: An Alternative Dispute Resolution Program" ("Solutions" or the "Arbitration Agreement"). (*Id.* at ¶ 5, Exh. C at 10.) The letter offer of employment directed

1  Plaintiff to "[r]eview and electronically accept the enclosed Solutions: An

2  Alternative Dispute Resolution Procedure Acknowledgement form." (*Id*.)  The

3  email offer letter from Defendants communicating the October 23, 2013 offer letter

4  of employment provided Plaintiff with a link to Defendant's "New Hire Website,"

5  which contained a link to a PDF version of Solutions that Plaintiff could review and

6  print for his records.  (*Id.* at ¶ 5, Exh. B at 8; ¶ 6.)

7       Plaintiff accepted the offer of employment through the BrassRing system on

8  October 24, 2013.  (*Id.* at ¶ 7, Exh. E at 49.)  To do so, Plaintiff had to click the "I

9  Accept" box corresponding to each of the policies that were included as part of the

10  terms of Plaintiff's new employment.  (*Id*. at ¶ 7, Exh. E at 47-48.)  The acceptance

11  box for Solutions, for which Plaintiff clicked the "I Accept" box, stated as follows:

12            I acknowledge that I have received and reviewed a copy of "Solutions:

13            An Alternative Dispute Resolution Procedure" ("Solutions").  I agree to

14            resolve disputes in accordance with the terms of Solutions and,

15            accordingly, I waive the right to pursue any Covered Claims (as

16            defined in Solutions) against [Defendants] (1) in court or (2) on a class

17            action basis either in court or through Solutions[.]

18  (*Id.* at ¶ 7, Exh. E at 47.)  At the end of the offer of employment, there was a

19  provision explaining the electronic signature process to Plaintiff:

20            Please note that providing the information requested below is

21            considered an electronic signature.  You attest to the authenticity of

22            your electronic signature by providing your name and a unique

23            identifier which will consist of a combination of the last 4 digits of

24            your social security number, plus the month and day of your birth.

25  (*Id.* at ¶ 7, Exh. E at 48.)  Plaintiff electronically signed the offer of employment by

26  providing his name, "lemont d. macon," and his unique electronic signature PIN,

27  "55090804," on October 24, 2013.  (*Id*.)

28

MOTION TO COMPEL ARBITRATION

**C. The Terms of Plaintiff's Arbitration Agreement**

Solutions contains a binding obligation on covered employees, as well as on Defendants, to submit all employment-related disputes and claims to the ADR procedures set forth therein.  (*Id.* at ¶ 6, Exh. D at § II.A.)  The Solutions ADR procedures consists of two internal levels of review "followed by, if necessary and applicable, outside mediation (Level III) and arbitration (Level IV)."  (*Id.*)  Solutions calls for any mediation or arbitration under Levels III and IV to be "administered by a nationally recognized **dispute resolution organization ("DRO")**."[1]  (*Id.* [emphasis in original].)  The "levels of Solutions are in a logical sequence, and employees must complete each level of the process before proceeding to the next level."  (*Id.*)  Outside mediation and arbitration are only available to the employee if the employee's claims are considered "Covered Claims."  (*Id.*)   Claims related to involuntary termination; employment discrimination and harassment based on disability, retaliation, and violations of public policy are all considered "Covered Claims."  (*Id.* at § II.K.)

Section II.M of Solutions, titled "Exclusivity of Arbitration for Covered Claims; Injunctive Relief, Individual Nature of Covered Claims," plainly provides that "Covered Employees and the Company are not allowed to litigate a Covered Claim in any court."  (*Id.* at § II.M.)  Section II.V of Solutions provides that any "resolution of a concern or claim reached through Solutions is final," meaning that neither an employee nor the Company "can bring forward a concern or a claim . . . in court that is based on substantially the same set of facts and circumstances as one that has been processed in accordance with the terms of Solutions."[2]  (*Id.* at § II.V.)

---

[1]      The chosen DRO for California is JAMS.  (Kaminsky Decl. at ¶ 8.)

[2]      Solutions does not "discourage or interfere with the parties . . . taking advantage of their rights to file administrative claims or charges with governmental agencies or authorities" such as the Equal Employment Opportunity Commission ("EEOC") or National Labor Relations Board ("NLRB"), but does provide that

Procedurally, the Arbitration Agreement provides that "[e]xcept as provided otherwise by this procedure, the mediation and arbitration of Covered Claims will be administered by [JAMS] under its current rules for mediation and for arbitration[.]" (*Id.* at § II.R.)  The JAMS Employment Arbitration Rules & Procedures, which Plaintiff could have obtained from the Solutions Administrator or his Human Resources Manager, provide for and authorize:

- The appointment of a neutral arbitrator (Rule 7(a));
- Discovery by the parties, including at least one deposition, voluntary disclosure of relevant documents, and identification of witnesses including expert witnesses with an ongoing duty to supplement (Rules 16(b), 17);
- The arbitrator to award "any remedy or relief that is just and equitable and within the scope of the Parties' agreement," including, but not limited to, specific performance of a contract or any other equitable or legal remedy," including the allocation of arbitration fees and/or attorneys' fees and expenses "if provided by the Parties' Agreement or allowed by applicable law."  (Rules 24(c), (f), (g).)
- A written arbitration award that contains "a concise written statement of the reasons for the Award, stating the essential findings and conclusions on which the Award is based" (Rule 24(h)); and
- The employer to pay all costs of arbitration, except for the initial JAMS Case Management Fee.  (Rule 31(c).)

(Decl. of David W. Ammons [hereinafter "Ammons Decl."] at ¶ 3, Exh. A at 13, 20-21, 25-27, 30.)  The Arbitration Agreement also requires that Defendants pay the filing and administrative fees, the arbitrator's fee and his/her reasonable travel and

---

either party may request that such administrative agency defer processing of that claim under exhaustion of the Solutions process.  (*Id.* at ¶ 6, Exh. D at II.I.)

living expenses, and the cost of renting an arbitration hearing room.  (Kaminsky Decl. at ¶ 6, Exh. D at § III.D.22.)

The Arbitration Agreement also provides that the arbitrator "shall decide all Covered Claims in accordance with the substantive law of the state or the federal circuit, or both, in which the claim arose," and "may grant any remedy or relief that would have been available had the claim been asserted in courts including "experts' and/or attorneys' fees to a 'prevailing party' under applicable law."  (*Id.* at §§ III.D. 18, 19, 22.)  The Arbitration Agreement does not prohibit the parties from being represented by counsel, restrict the parties' right to obtain discovery, or limit the individual remedies available.

**D. Procedural History**

Plaintiff filed his Complaint against Defendants in the Superior Court of California for the County of Los Angeles in an action entitled *Lemont Macon v. Universal City Studios Productions, LLLP; NBCUniversal Media, LLC; AND Does 1 through 25, inclusive* on June 26, 2018.  (Ammons Decl." at ¶ 2.)  The Complaint asserts eight purported causes of action arising out of Plaintiff's employment with Universal Studios: (1) disability discrimination in violation of California Fair Employment & Housing Act ("FEHA"); (2) failure to accommodate disability in violation of FEHA; (3) failure to engage in the interactive process in violation of FEHA; (4) retaliation in violation of FEHA; (5) retaliation—protected activity in violation of FEHA; (6) failure to prevent discrimination in violation of FEHA; (7) wrongful termination in violation of public policy; (8) declaratory relief. Defendants removed this action to federal court pursuant to 28 U.S.C. §§ 1332(a) and 1441 on July 27, 2018, (*Id.* at ¶ 2), and now move the Court to compel Plaintiff to submit his claims to binding arbitration.

//

//

**E. Defendants' Meet and Confer Efforts**

On July 11, 2018, counsel for Defendants spoke with Plaintiff's counsel and informed him that Plaintiff had signed the Arbitration Agreement and requested that Plaintiff submit to binding arbitration.  (Ammons Decl. at ¶ 4.)  The next day, July 12, 2018, counsel for Defendants sent Plaintiff's counsel a copy of the Arbitration Agreement and Plaintiff's acceptance of the terms of that Arbitration Agreement via email.  (*Id.* at ¶ 5, Exh. B.)  Plaintiff's counsel responded telephonically on July 20, 2018 and stated that Plaintiff would not agree to binding arbitration because he believed Solutions to be both procedurally and substantively unconscionable.  (*Id.* at ¶ 6.)

**III.   ARGUMENT**

**A. All of Plaintiff's Claims Are Subject to a Binding and Enforceable Arbitration Agreement.**

The Federal Arbitration Act ("FAA") governs arbitration agreements in written contracts involving transactions in interstate commerce.  *See* 9 U.S.C. § 2; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001).  With limited exceptions not implicated here, the FAA applies to arbitration agreements contained within employment contracts.  *Circuit City*, 532 U.S. at 109 (holding that the FAA applies to all employment contracts except for those involving transportation workers); *EEOC v. Waffle House*, 534 U.S. 279, 289 (2002) ("Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA.")  The "overarching purpose of the FAA, evident in [its text], is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).  The FAA reflects a "liberal federal policy favoring arbitration" as well as the "fundamental principle that arbitration is a matter of contract."  *Id.*

1  (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 24

2  (2008) *and Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

3      The FAA "requires courts to enforce [arbitration agreements] according to

4  their terms." *Rent-A-Center*, 561 U.S. at 67.  By its very terms, the FAA "leaves no

5  place for the exercise of discretion by a district court, but instead mandates that

6  district courts *shall* direct the parties to proceed to arbitration on issues to which an

7  arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470

8  U.S. 213, 218 (1985) (emphasis in original); *Kilgore v. KeyBank Nat'l Ass'n*, 718

9  F.3d 1052, 1058 (9th Cir. 2013).  The FAA thus limits courts' involvement to

10 "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2)

11 whether the agreement encompasses the dispute at issue.*" Cox v. Ocean View Hotel*

12 *Corp.*, 533 F. 3d 1114, 1119 (9th Cir. 2008) (*quoting Chiron Corp. v. Ortho*

13 *Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).  Any doubts "about the

14 scope of arbitrable issues, including applicable contract defenses, are to be resolved

15 in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir.

16 2016).

17      1.  *The Arbitration Agreement that Exists Between Plaintiff and Defendants is*

18          *Valid.*

19      Here, the uncontroverted facts demonstrate that Plaintiff was presented with,

20 and electronically agreed to be bound by, the terms of Solutions, including its

21 arbitration provisions, when he accepted the offer of employment to be the Front

22 Gate Supervisor in October 2013.  (Kaminsky Decl. at ¶ 7, Exh. E.)  Nothing about

23 Solutions or its provisions was hidden or obscured from Plaintiff prior to his

24 acceptance of Solutions' terms and conditions.  To the contrary, the terms of

25 Solutions were set forth in a separate, stand-alone document that Plaintiff was

26 directed to read prior to accepting the offer of employment from Defendants.  (*Id.* at

27 ¶ 6, Exh. D.)  Plaintiff then utilized a unique identifier, comprised of the last 4 digits

28

of Plaintiff's social security number and the month and day of his birth, to electronically aver that he had received and reviewed the terms of Solutions and agreed to resolve disputes arising from his employment with Defendants in accordance with the terms thereof.  (*Id.* at ¶ 7, Exh. E.)  There is thus no basis upon which Plaintiff can credibly claim that his actions in accepting the terms of Solutions when he accepted Defendants' offer of employment did not reflect his agreement to the terms of Solutions.  It is worth noting that this Court has previously held that Defendants' Arbitration Agreement is a valid agreement.  *See, e.g., Asher v. E! Entertainment Television, LLC*, No. CV 16-8919-RSWL-SSx, 2017 WL 3578699 (C.D. Cal. Aug. 16, 2017); *NBCUniversal Media, LLC v. Pickett*, No. LA CV 17-01404 JAK (MRWx).[3]

To the extent that Plaintiff argues now, after-the-fact, that he did not read or understand the document he signed or the terms and conditions thereof, those arguments cannot be used as a basis to invalidate the Arbitration Agreement.  When determining whether a valid and enforceable contract to arbitrate exists, federal courts should apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citations omitted); *see Goff v. G2 Secure Staff LLC*, No. CV 12-10008-CAS (VBKx), 2013 WL 1773968, at *2 (C.D. Cal. Apr. 22, 2013).  In California, "[r]easonable diligence requires the reading of a contract before signing it[]" and a "party cannot use his own lack of diligence to avoid an arbitration agreement."

---

[3]      Other federal district courts have also held Solutions to be a valid and enforceable arbitration agreement.  *See, e.g., Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390 (S.D.N.Y. 2013); *Curtis v. GE Capital Corp.*, No. 5:12CV133-RLV, 2013 WL 4212932 (W.D.N.C. Aug. 15, 2013).  General Electric ("GE") and NBCU both employ the Solutions ADR procedures because GE owned NBCU prior to 2013, when NBCU was sold to Comcast.  *See* Liana B. Baker, *GE to Sell Rest of NBC Stake to Comcast for $16.7 Billion*, Reuters (Feb. 12, 2013), https://www.reuters.com/article/us-ge-nbc-idUSBRE91B1IM20130212.

*Brookwood v. Bank of Am.*, 53 Cal. Rptr. 2d 515, 520 (Cal. Ct. App. 1996) (citation omitted).  An arbitration clause "may be binding on a party even if the party never actually read the clause."  *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev.(US) LLC*, 282 P. 3d 223, 236 (Cal. 2012); *see Harris v. TAP Worldwide, LLC*, 203 Cal. Rptr. 3d 522, 530 (Cal. Ct. App. 2016) (holding that employee "either chose not to read or take the time to understand" the arbitration provisions contained in his employee handbook was "legally irrelevant").

Plaintiff certainly read and understood the instructions on how to properly provide his electronic signature and create a unique identifier, or electronic signature PIN, such that he could accept Defendants' offer of employment.  (*See* Kaminsky Decl. at ¶ 7.)  Defendants did everything they could to provide Plaintiff with a copy of Solutions and incentivize him to review it.  (*See* Kaminsky Decl. at ¶¶ 5-7, Exhs. C, D, E.)  If Plaintiff chose not to read the terms of Solutions, that failure rests solely on him and cannot be used to avoid legal application of the Arbitration Agreement.  *See Harris*, 203 Cal. Rptr. 2d at 530 (discussing line of California cases that "hold that when an employee signs an acknowledgement of receipt of an employee handbook, she or he is bound by its contents," including any arbitration agreements contained therein).

   2.  *The Arbitration Agreement that Exists Between Plaintiff and Defendants Encompasses the Dispute at Issue.*

Given the strong federal policy favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," regardless of "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *see Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1103 (C.D. Cal. 2002).  Such a presumption in favor of arbitration is particularly applicable where the arbitration agreement employs broad language to

1   render any and all claims or differences subject to arbitration.  *See AT&T Techs.,*

2   *Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650 (1986).  In such cases,

3   "only the most forceful evidence of a purpose to exclude the claim from arbitration

4   can prevail." *Id.* (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S.

5   574, 584-85 (1960)).

6        Here, there is no doubt that the Arbitration Agreement encompasses all of

7   Plaintiff's claims.  The Arbitration Agreement expressly compels arbitration of "all

8   claims that arise out of or are related to an employee's employment or cessation of

9   employment herein (whether asserted by or against the [Defendants])."  (Kaminsky

10  Decl. at ¶ 6, Exh. D at § II.K.)  The Arbitration Agreement further specifically

11  identifies Covered Claims as those involving involuntary terminations, employment

12  discrimination, retaliation, and violations of public policy.  (*Id.*)  Plaintiff's eight

13  causes of action all arise out of, or are related to, his employment with Defendants,

14  and are thus clearly within the scope of Solutions' expansive language.  There is no

15  language in Solutions, or any other evidence, indicating an intent to exclude

16  Plaintiff's claims from arbitration.  Accordingly, the Arbitration Agreement

17  encompasses all of Plaintiff's claims.

18       **B. The Court Should Dismiss the Action Because All of Plaintiff's Claims**

19              **are Subject to Arbitration.**

20       Upon finding an enforceable arbitration agreement, the Court has discretion to

21  stay or dismiss the action.  *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638

22  (9th Cir. 1988); *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1176 (C.D.

23  Cal. 2008).  Dismissal is appropriate where all a plaintiff's claims are subject to

24  arbitration.  *See Sparling*, 864 F.2d at 638; *Farrow v. Fujitsu Am., Inc.*, 37 F. Supp.

25  3d 1115, 1126 (N.D. Cal. 2014).  As set forth above, all of Plaintiffs' claims are

26  subject to arbitration, and thus dismissal is appropriate here.  In the alternative, if the

27  Court is not inclined to dismiss the action, the matter should be stayed pending

28

1  completion of arbitration between the parties.  *See* 9 U.S.C. § 3; *Sparling*, 864 F.2d
2  at 638.

3  **IV.    CONCLUSION**

4         For the foregoing reasons, Defendants respectfully request that the Court
5  issue an order (1) compelling Plaintiff to arbitrate his claims pursuant to the
6  Arbitration Agreement; and (2) dismissing his case.  Alternatively, Defendants
7  respectfully request that the Court stay this action pending the completion of
8  arbitration.

9

10  DATED: August 31, 2018                          **LTL ATTORNEYS LLP**

11                                               */s/ David W. Ammons*
12                                               David W Ammons
13                                               Melissa A. Meister
14                                               Attorneys for Defendants
                                                 Universal City Studios Productions
15                                               LLLP & NBCUniversal Media, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **CERTIFICATE OF SERVICE**

The undersigned certifies that on August 31, 2018, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing ("ECF") system.  The ECF system routinely sends a "Notice of Electronic Filing" to all attorneys of record who have consented to accept notice of this document by electronic means.

Dated:               August 31, 2018               LTL ATTORNEYS LLP


By: /s/AJ Cruickshank